**Andrew G. Patel**
Attorney-at-Law
The Trinity Building
111 Broadway, 13th Floor
New York, New York 10006
Telephone 212-349-0230                                                                         Fax 212-346-4665

**By Hand**

May 12, 2008

The Honorable Robert P. Patterson
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY  10007

                              Re:    United States v. Charles Watts
                                     S2 07 Cr. 872 (RPP)

Dear Judge Patterson:

        I have been practicing in this Court for almost twenty years.  When I was new to this Court, I had a sentencing matter before the Honorable Kevin T. Duffy.  The matter had some issues concerning the Sentencing Guidelines which were then relatively new.  After I had finished a detailed discussion of the Guideline issues, Judge Duffy told me, in sum and substance that my argument was interesting but what he really wanted to know is what kind of man was standing before him.  I have been striving to answer that question for all my clients since that day.

        The man who will stand before your Honor for sentencing is an extraordinary young man.  In the midst of a law abiding and honorable life, he made a serious error of judgement and he must be punished for what he did.  I have only known Mr. Watts since I was assigned to represent him in October of last year.  What I can say about the man he is pales in comparison to the 31 letters attached to this submission.  These are letters from friends, family, educators, students, clergy, professionals, old people, young people, people who have

**The Honorable Robert P. Patterson**
United States District Judge
May 12, 2008
Page 2

recently enter Mr. Watts' life and from people who have know almost from the day he entered this world.  As in the matter, before Judge Duffy, I have some comments to make about the Pre-sentence Report and the Guidelines.  I hope that I can be as articulate in my discussion of the legal issues before your Honor as the members of his community who have written to your Honor have been about the character of Mr. Watts.

**Additions and Corrections to the Pre-Sentence Report**

We have previously submitted extensive comments to the Department of Probation concerning the disclosure of the initial Pre-Sentence Report [PSR].  As a result of discussions with Assistant United States Attorney Antonia M. Apps this past weekend, the parties now agree that the Guideline calculations in the PSR are correct.  The comments that follow are offered as corrections and supplements to the PSR.

**Page 5, Paragraph 12**

This paragraph incorrectly states that Mr. Watts is a "prohibited person" as the result of an indictment that resulted from an arrest in Virginia.  Mr. Watts was arrested in Virginia on February 8, 2007.  The case in Virginia remains open and Mr. Watts has not been indicted on that matter.  Mr. Watts is not a "prohibited person" as the Addendum to the PSR correctly indicates.

**Page 6, Paragraph 16**

We object to the last sentence of this paragraph.  Mr. Watts had no involvement in the decision where Mr. Deacon met the CI .  While the location was in front of the building where Mr. Watts lives, the location is also directly across the street from where the mother of the CI's child ("Baby's Mom" in street parlance) lives.  The chosen location was well

**The Honorable Robert P. Patterson**
United States District Judge
May 12, 2008
Page 3

known to the CI, independent of where Mr. Watts happens to live.

**Page 8, Paragraph 27**

The PSR states that the Probation Department has no information to indicate that Mr. Watts impeded or obstructed his arrest, investigation, or prosecution.  While that statement is correct, it fails to appraise your Honor of the fact that Mr. Watts self-surrendered to the Court as soon as he learned that a warrant for his arrest had been issued.

**Page 11/12, Paragraph 52**

Mr. Watts' mother wrote a letter to your Honor which is attached at Tab No. 1.  As she said in her letter to your Honor, Ms. Watts told me during our telephone conversation that she is now 67 years old and working as a part-time health care worker to help care for "older people like me."

Ms. Watts informed me that Charlie came into her home as a 1½ year old foster child. Before Charlie's 3rd birthday, Mr. Watts died.  When Charlie was 5 years old , Ms. Watts, then a single parent, adopted Charlie.  Ms. Watts remains supportive of her son, who she loves very much.

**Page 12, Paragraph 54**

This portion of the PSR discusses the relationship between Mr. Watts and Latoya Carr.  Ms. Carr is engaged to marry Mr. Watts.   A letter from Ms. Carr to your Honor is attached at Tab No. 2.  As Ms. Carr indicates in her letter, she has known Mr. Watts for 20 of her 26 years.  Ms. Carr is a bright and articulate woman.  Her letter speaks for itself.  The one point that I would like to bring to your Honor's attention is her description of the close relationship that Mr. Watts has with her daughter, JayLynn.  Mr. Watts is not JayLynn's father but he has acted like her father.  His involvement in JayLynn's education is

**The Honorable Robert P. Patterson**
United States District Judge
May 12, 2008
Page 4

demonstrated by the attached letters from her teacher, Malkia Songrad (Tab No. 3) and the the Principle of JayLynn's school, Mr Dennis McKesey (Tab No. 4) in which Mr. McKesey describes his surprise when he learned that Mr. Watts was not JayLynn's biological father.

**Page 12, Paragraph 55**

As indicated in the PSR, Mr. Watts has 2 children with Ms. Dante Miller.  Ms. Miller's letter to your Honor is attached at Tab No. 5.  In her letter, Ms. Miller talks about the deep involvement that Mr. Watts has with his children which includes walking them to school and helping them with their homework.  Ms. Miller's description of Mr. Watts as an excellent father is echoed in the letter to your Honor from her mother (Tab No. 6) who, in addition, discusses her own close relationship with Charlie.

Of all the letters attached to this submission, the letter that surprised me the most is attached at Tab No. 7.  It is a letter from Ms. Miller's father, James Brown, Jr.  If a young man who had fathered 2 children with my then teenage daughter was arrested, I do not think that I would write to his sentencing judge as describe that man as "A great asset to his family, friends and society as well."  Mr. Brown is a better man than I am and I would respectfully submit that the very existence of such a letter from this gentleman speaks volumes about the positive impression that Mr. Watts has made on people whose lives he has touched and whose homes he has entered.

**Page 13, Paragraph 56**

Mr. Watts has 2 tattoos that merit further discussion.  The tattoo on his left hand that says "Death before dishonor."  All that Mr. Watts can say about his military service is that he was deployed to Afghanistan and to Iraq.  See discussion below.  While deployed over-seas, a fellow soldier was captured and killed by the enemy who cut off his left hand.  Mr.

**The Honorable Robert P. Patterson**
United States District Judge
May 12, 2008
Page 5

Watts got the tattoo on his left hand to honor a fallen friend who was killed serving his country.

The tattoo mural of his children on his back includes the image his sons Charlie and Pheonix and well as the image of JayLynn, who, as discussed above, is not Mr. Watts' biological child.

**Page 13, Paragraph 57**

Medical records obtained by counsel confirm that Mr. Watts injured his knee on July 29, 2006.

**Page 13, Paragraph 61**

Prior to his arrest, Mr. Watts was attending the College of New Rochelle. Mr. Watts had to withdraw from school after his arrest in this matter. A copy of his transcript indicating his withdrawal is attached at Tab No. 8. Mr. Watts dedication to his children's education and to his own education is well illustrated by a letter to your Honor from James Washington II, attached at Tab No. 9. Mr. Washington met Mr. Watts when Mr. Washington was involved in a program in Charlie, Jr's school. They latter became classmates at the College of New Rochelle. In his letter, Mr. Washington describes how the tutoring that he received from Mr. Watts enabled him to have a high enough grade point average to be able to continue his own education.

**Page 13, Paragraph 62**

Mr. Watts declined to provide details of his overseas military service not to be rude to the Probation Officer or to the Court, but rather to honor a confidentiality agreement that the Department of Defense required him to sign due to the nature of his military service. A copy of Mr. Watts' Honorable discharge certificate is attached at Tab No. 10.

**The Honorable Robert P. Patterson**
United States District Judge
May 12, 2008
Page 6

Mr. Watts' military service helped and inspired others. Ms. Tyiesha Davis met Mr. Watts when they served in the same unit. Her letter to your Honor is attached at Tab No. 11. Ms. David wrote to inform your Honor of the help that he provided to her in the service and the help that he provides to the community at large.

In another letter to your Honor (Tab No. 12), Samantha Anderson-Sikes says that Mr. Watts' military service is part of what inspired her to join the United States Air Force. In discussing Mr. Watts, she quotes to the Air Force code of conduct as requiring "Integrity First."

**Other Issues Relevant to Sentencing**

There is no dispute as to the Guideline range as calculated by the Department of Probation. The properly calculated Guideline range for Mr. Watts is a term of imprisonment for 30 to 37 months. The Department of Probation recommends a sentence at the bottom of that range. As the Supreme Court said in *Gall v. United States*, 128 S. Ct. 586, 596 (2007) the Guidelines are the starting point but they are not the only consideration. In determining an appropriate sentence, the Supreme Court instructs that the sentencing Court must consider all the factors in 18 U.S.C. 3553(a) and may not presume that the Guideline range is reasonable. What is required is an "individualized assessment based on the facts presented." *Id. at 587.*

It is respectfully submitted that the facts, unique to Mr. Watts, support a non-Guideline sentence. In relevant part, 18 U.S.C. 3553(a) requires the Court to consider the following factors;

      1.     The nature and seriousness of the offense and the history and character

**The Honorable Robert P. Patterson**
United States District Judge
May 12, 2008
Page 7

of the defendant;

2.    The need for a sentence to:

(A) reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

3.    The third factor pertains to "the kinds of sentences available;

4.    The Sentencing Guidelines;

5.    Any relevant policy statement issued by the Sentencing Commission;

6.    The need to avoid unwarranted sentence disparities

7.    The need to provide restitution to any victim.

In applying these factors, the statute requires sentencing Court to "impose a sentence sufficient, but not greater than necessary to comply with these factors.

The first factor that your Honor must consider is nature of the offense and the history and character of the defendant.  The offense committed by Mr. Watts is a very serious one. There is no question that his conduct endangered the public.  It is equally beyond question that except for the 10½ months covered by this indictment. Mr. Watts has led a productive, law abiding life that included service to his family, his community and his country.

The letters and documents attached to this submission attest to Mr. Watts' history and

**The Honorable Robert P. Patterson**
United States District Judge
May 12, 2008
Page 8

character. These letters relate stories of how Mr. Watts has made the lives of people better by inspiring them to leave an abusive relationship (see letter from Jennifer Bynes, attached at Tab No. 13); inspiring people to continue their education (see letter from Syracuse University student, Mark Kemper, attached at Tab No. 14); or his acceptance of a friend's alternative life style ( letter from Robert Pierce, attached at Tab No. 15). There are letters from an attorney (Tab No. 16); maintenance worker (Tab No. 17); social workers (Tabs No. 18 and 19); minster (Tab No. 20); a retired accountant (Tab No. 21); blue-collar working people (Tabs No. 22 and 23); educators (Tabs No. 24 - 27); friends, family and people whose lives Charlie Watts has touched in a positive way (Tab No. 28 -32); and even Mr. Watts' future mother-in-law wrote to your Honor on his behalf (Tab No. 33).

These letters tell more about Mr. Watts than could ever be learned in a pre-sentence investigation. They tell of his devotion to his family and his voluntary contributions to his community. What I respectfully submit is most unusual about these letters is their scope. These letters are from people in every aspect of Mr. Watts' life. Each of these letter tells a story of what Mr. Watts has meant to each of them and the positive example that he has been to those who took the time to write to this Court.

Not a single letter attached to this submission excuses, diminishes or denies what Mr. Watts did wrong. It is one thing to stand in an empty courtroom to enter a guilty plea and thereby "accept responsibility." It is an entirely different order of magnitude to reach out to everyone that you know and admit that you committed a serious crime. Most people accused of a crime deny, excuse or minimize their crimes. To the contrary, Mr. Watts stood up in court and in his community and acknowledged the wrongs he committed. It is respectfully submitted that informing such a diverse group of people of what you did wrong says a great

**The Honorable Robert P. Patterson**
United States District Judge
May 12, 2008
Page 9

deal about the strength of character of Charlie Watts.

When Mr. Watts learned that a warrant had been issued for his arrest, he came into this courthouse and surrendered himself. Mr. Watts' self-surrender shows a respect for the law that is entirely consistent with the person reflected in the attached letters. The obvious question is why would a person of the qualities described of Mr. Watts get involved in a conspiracy to run guns from South Carolina to New York. There is no good or acceptable answer to that question. Mr. Watts has always been in excellent physical condition. Mr. Watts injured his knee on July 29, 2006. For the first time in his life, he was unable to walk. Having survived two military over-seas deployments, Mr. Watts was confronted with the limits of his physical abilities and he listened to some bad advice from an old acquittance. Mr. Watts recognizes that these facts do not excuse his conduct. He has learned that he must do as he had often advised others to do: find lawful ways to overcome times of adversity.

As the transcript at Tab No. 8 indicates. Mr. Watts had to withdraw from his classes at the College of New Rochelle upon his arrest in this matter. The days when an inmate in a Bureau of Prisons facility could complete his college education are long gone. Mr. Watts has every intention of completing his college education, something that he cannot do from a federal prison.

There is a factor built into the Guidelines which is both critical and difficult to gauge. In adopting the guidelines, Congress sought to avoid disparity of sentencing. I have reviewed various reports of the Sentencing Guidelines Commission to see how first-time offenders charged with transporting weapons without a license have been treated nationally. Unfortunately, in the Commission reports that I was able to find, the Commission reported only those convicted of "firearm" offenses. The Commission reports did not breakdown any

**The Honorable Robert P. Patterson**
United States District Judge
May 12, 2008
Page 10

different treatment for those convicted as prior felons in possession of a weapon from first-time offenders like Mr. Watts. Mr. Watts was arrested as part of an effort to deal with the serious problem of weapons being transported from areas where they are readily available to areas where they are highly regulated. It is reasonable to assume that this crime is not seen a large a problem is districts and circuits where handguns are regulated at a much lower level than they are in New York. I simply cannot tell from the Commission reports if offenders in Mr. Watts' position are sentenced within the Guidelines across the country. In fact, it is not possible to tell how frequently such cases are brought in federal court. I raise this question not, in anyway to denigrate the seriousness of the offense that Mr. Watts committed, but only to inform your Honor that my review of the Commission reports makes impossible for me to inform your Honor that a sentence below the suggested Guideline range may well be a sentence in line with what happens in other parts of the country and not a disparate sentence at all.

Mr. Watts has been incarcerated since October 11, 2007, just over 7 months without any calculation for good time credit. Prior to his involvement in the conduct that lead him before your Honor, he has lead an exemplary life. I respectfully submit the contributions that Mr. Watts has made to his family, his community and his nation indicate that the time he has spent in prison has been very serious punishment for his serious crime. The Guideline range is a factor that your Honor must consider, but your Honor must also consider other factors outline in the statute. While factors such as acceptance of responsibility are factored into the guidelines, your Honor is free to consider the way in which Mr. Watts has accepted responsibility.

There are many affluent people who donate large sums of money to institutions, their

**The Honorable Robert P. Patterson**
United States District Judge
May 12, 2008
Page 11

names appear on hospitals, libraries and building on the campus's of major universities. Mr. Watts does not have money but he has given of himself. He has given his time, attention and concern to his family, to his children's schools and to his community. The name Charlie Watts will never be engraved in granite, but the names of those he helped inspire, coach and encourage will be written on college diplomas, advance degree certificates and military discharge papers. The positive contribution that Charlie Watts has made may be difficult to quantify but it is very real.

In light of all the factors that your Honor must consider and to join the repeated request for leniency in the attached letters, I respectfully ask that your Honor consider imposing a sentence of time served.

Respectfully submitted,

s/Andrew Patel

_____
Andrew G. Patel

encl.

cc:    Antonia M. Apps
       Assistant United States Attorney (By Hand, w/enclosures)

       Thomas J. McCarthy
       Senior United States Probation Officer (By Hand, w/enclosures)

       Charles Watts (By U.S. Mail, w/enclosures)